

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| MICHAEL L BOHANNON | § | CASE NO: 10-33291 |
| Debtor(s) | § | |
| | § | CHAPTER 7 |

## MEMORANDUM OPINION
## REGARDING DENIAL OF TRUSTEE'S MOTION TO TRANSFER INTEREST
## (DOC # 40)

"Property of the estate" of this bankruptcy case includes a lawsuit for wrongful termination of Debtor's employment by a Nevada business, *i.e.* a whistleblower lawsuit. To encourage Debtor to participate fully in the prosecution of that lawsuit, the chapter 7 Trustee proposed to transfer to Debtor 15% of any net recovery in the lawsuit, free of the claims of the bankruptcy estate and creditors. After a hearing, the Court concludes that under the circumstances of this case the proposed transfer is neither wise nor permissible. Therefore, by separate order previously issued, the motion was denied.

FACTS

The following facts are not in dispute.

Prior to filing his voluntary bankruptcy petition Michael Bohannon (who later became "Debtor") filed a Lawsuit[1] in Nevada against First Choice Business Brokers ("First Choice"). Mr. Bohannon's attorney was Michael P. Balaban. Debtor's complaint alleges that Debtor was hired by First Choice about April 1, 2008, to be First Choice's Vice President for Franchise Development. Debtor relocated to Nevada to take that job. The complaint alleges that Debtor was fired June 22, 2008, because he was a whistleblower, having exposed First Choice's alleged violation of FTC regulations.

On January 5, 2010, First Choice filed its answer and counterclaim in the Lawsuit. The answer and affirmative defenses are essentially a general denial of Debtor's allegations. The counterclaim asserts that Debtor was fired for cause, including alcohol abuse and solicitation of a fellow employee to obtain illegal drugs; the counterclaim seeks damages for breach of contract, defamation, *etc.*

Debtor filed a voluntary petition in this bankruptcy court *pro se* on April 22, 2010, commencing this case under chapter 7 of the Bankruptcy Code.[2] Debtor did not list the Lawsuit

---

[1] Bohannon v. First Choice Business Brokers, Inc., Case No. 09-592724-C, District Court of Clark County, Nevada, Department XVIII. A copy of the petition is attached to document # 46 in this bankruptcy case.

[2] Debtor had filed a prior bankruptcy case in the Southern District of Texas: Case # 08-31874 filed *pro se* on March 27, 2008, approximately five days prior to signing the agreement to take the First Choice job. That case was assigned to Judge Isgur. In Schedule I, filed March 27, Debtor indicated that he had no income and Debtor

on Bankruptcy Schedule B, nor did Debtor list a lawsuit of any kind in response to question # 4 of the bankruptcy Statement of Financial Affairs or anywhere else in the original Statement of Financial Affairs. The schedules and statement of financial affairs are printed, legible documents that appear to have been computer generated.

On May 17, 2010, Debtor filed with the Clerk a handwritten document that disclosed the Lawsuit and asserted that it was exempt from creditors' claims, choosing Texas exemptions. On the same date, Debtor filed a handwritten document adding First Choice as a creditor of the bankruptcy estate.

In his bankruptcy schedules, Debtor listed creditors allegedly holding $37,251 of unsecured claims. As noted above, First Choice was not listed as a creditor until May 17. The deadline for filing proofs of claim was October 4, 2010. The Court's claims register shows that 9 claims have been filed, of which $80,463.94 were filed as unsecured claims. The largest claim, $55,000, was filed by First Choice. Attached to that claim is a copy of First Choice's answer and counterclaim in Debtor's Lawsuit.

On June 16, the Trustee filed an objection to Debtor's assertion that the lawsuit was exempt from creditors' claims. Debtor did not respond to that objection, and on July 22, the Court sustained the objection.

On August 16, 2010, the chapter 7 Trustee filed a "Motion to Transfer Interest,"[3] which was the subject of the hearing on October 4, and is the subject of this memorandum. In the motion, the Trustee alleged that:

> In order to discharge his duties for this estate, Trustee requires the Debtor's cooperation in the estate's prosecution of the Lawsuit. Without the Debtor's willing cooperation, Trustee believes the estate's prosecution of the Lawsuit will be jeopardized. Debtor is willing to assist the Trustee … as long as he is compensated for his assistance. Debtor has agreed to assist the Trustee in consideration for the transfer of 15% of any recovery from the prosecution of the Lawsuit by the Trustee after payment of Special Counsel's fees and expenses (the "Net Recovery").[4]

No party in interest objected to the motion, but the Court set the motion for hearing with an order that read, in part:

---

provided no response to item 17 on Schedule I which asks if Debtor could anticipate any increase in income. As in the instant case, Debtor represented that he did not have sufficient funds to pay the filing fee in full and asked to pay in installments. (These representations were made only 5 days prior to signing the contract to be First Choice's VP.) Judge Isgur scheduled a hearing on May 19. The hearing was held <u>while</u> Debtor was allegedly employed by First Choice, but Debtor did not pay the filing fee, did not ask for a continuance of the hearing, and did not ask to appear at the creditor's meeting through one of the alternative methods that the Court provides for debtors who move after filing a bankruptcy petition. Debtor failed to appear at the hearing and failed to appear at the creditors' meeting. The case was dismissed by Judge Isgur on May 19, 2008. Debtor's last appearance on the docket sheet of the first bankruptcy case was March 27, 2008, the application to pay the filing fee in installments. Debtor apparently simply ignored the first bankruptcy case after that.

[3] Docket # 40.
[4] *Id.*

> The Court is not inclined to grant the relief requested. The Trustee must be prepared to present evidence concerning the claims raised in the lawsuit, the estimated value of the lawsuit, the prospects for success on the merits of the lawsuit, the discussions between Debtor and the Trustee, and the amount of claims that Trustee expects to be allowed in the case.[5]

On September 21, the Trustee filed a motion to engage Mr. Balaban to represent the Trustee to prosecute the Lawsuit on a 40-45% contingency fee, with Mr. Balaban to advance trial costs and to recover those costs from proceeds of the judgment if successful.

After hearing the Trustee, Debtor, and the US Trustee concerning the motion to transfer 15% of the net proceeds of the Lawsuit to Debtor, the Court denies the motion for the following reasons.

 1. Debtor has a Legal Duty to Cooperate With the Trustee Without Compensation

Bankruptcy Code § 521(a)(3) provides: "The debtor shall … cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title." That requirement is also found in rule 4002(a)(4) of the Federal Rules of Bankruptcy Procedure (FRBP). These authorities, and more, are cited and analyzed by Judge Bohm in *In re Royce Homes, LP.* 2009 WL 3052439 (Bkrtcy. S.D.Tex.)

 2. Whether Entry of Debtor's Discharge Changes the Dynamic For Obtaining Debtor's Cooperation

Debtor received a bankruptcy discharge on September 10, 2010. There was argument at the hearing on October 4 concerning whether, after discharge, the statutory duty to cooperate with the Trustee is adequate or whether an additional incentive, a financial incentive, is necessary to motivate Debtor to cooperate in the prosecution of the Lawsuit. One party argued that if Debtor did not cooperate it would not be possible to prevail on a complaint to revoke Debtor's discharge and therefore the only way to motivate Debtor to comply with the statutory duty was to give Debtor a financial incentive.

Even assuming that Debtor is not motivated by a good faith desire to comply with the law, and even if Debtor is not motivated to vindicate his conduct as a whistleblower, the Court is not persuaded that there is no incentive for Debtor to cooperate after his discharge was entered.

As noted above, the law requires a Debtor to cooperate with the Trustee in the administration of the case. The Trustee alleges that prosecution of this lawsuit is essential to his prosecution of the case. A review of the schedules indicates that the Lawsuit is the only asset with potential value to pay the unsecured creditors' claims. Presumably, the Court could be persuaded to order Debtor to comply with his statutory duties.

---

[5] Docket #44, *Order for Hearing on Motion to Transfer Interest*.

Bankruptcy Code § 727(d)(3) provides that the Court <u>shall revoke</u> a discharge if Debtor has violated § 727(a)(6), *i.e.* failure to obey a court order. The complaint to revoke a discharge can be brought by the chapter 7 Trustee, the US Trustee, or any creditor. While one of the parties at the hearing on October 4 did not think that successful prosecution of a § 727(d)(3) complaint was likely, the Court is not convinced that other potential plaintiffs would be as pessimistic.

Therefore the Court is not persuaded that revocation of a discharge is virtually impossible and that therefore a financial incentive is necessary after discharge. If Debtor's discharge were revoked, Debtor would be at risk with respect to First Choice's counterclaim (and the other claims in this bankruptcy case), unless the Trustee prevailed on the claim against First Choice.

> 3. The Need to Provide For Debtor's Expenses of Preparation for Trial and For Attending A Trial in Nevada

One of the parties at the hearing suggested that the 15% payment to Debtor was necessary because Debtor would incur expenses to participate in trial preparation and to attend the trial in Nevada. That argument is not persuasive for three reasons.

First, the proposal to give Debtor a 15% interest in Lawsuit does not provide any funds to prepare for trial or to attend trial in Nevada. The 15% does not have any significance until and unless the chapter 7 Trustee prevails in the Nevada lawsuit and collects on the judgment. The Trustee has no funds to advance to Debtor to cover Debtor's expenses.

Second, Debtor's bankruptcy schedules I & J show that Debtor's take-home income is $2,250 and his monthly living expenses are $2,219. The schedules do not show any anticipated increase in income. Debtor's application to pay the filing fee in installments represent that Debtor was unable to pay the $299 filing fee when he filed the case. Apparently, Debtor does not have and would not have the funds to pay for travel to Nevada, even if he received the 15% interest in the proceeds of the litigation.

Third, the chapter 7 Trustee has filed an application to engage contingency counsel. The application contemplates that contingency counsel will pay all expenses of the litigation and recover those expenses from any successful execution on a judgment. There is simply no other source of payment.

Therefore, the Court is not persuaded by the argument that it is necessary to give Debtor 15% of the proceeds of the litigation to incentivize Debtor to pay his expenses to travel to Nevada to participate in the litigation.

> 4. Thoughtful Analysis Suggests that It Is In Debtor's Financial Best Interests To Cooperate Fully

The chapter 7 Trustee and the US Trustee argued that giving Debtor a 15% interest in the litigation proceeds is necessary to get Debtor's "full" cooperation, not just his nominal cooperation. But the amounts involved in this case suggest that Debtor's best efforts may not be

critical to the bankruptcy case and even if they were, his full cooperation is in his own best financial interests even without the 15% that the Trustee proposes to give him.

      a. What Are the Trustee's Options Without Debtors Enthusiastic Cooperation

The Court assumes that the chapter 7 Trustee has explained to Debtor (and to contingency counsel) that the Trustee can settle this case with First Choice prior to engaging contingency counsel and without Debtor's consent. The Trustee might do so if the Trustee seriously believes that he will not get Debtor's full cooperation. If the Trustee could settle with First Choice before engagement of contingency counsel for as much as $40,000 (and a withdrawal of First Choice's claim in this bankruptcy case) the Trustee would probably be able to pay 100% of the claims in the estate, including administrative claims. Depending on the level of Debtor's cooperation and the Trustee's assessment of the likelihood of prevailing on the merits, the trustee might even settle for less. Perhaps the Trustee might simply give First Choice a release in exchange for a withdrawal of First Choice's proof of claim, leaving First Choice with whatever rights it has to seek revocation of Debtor's discharge if First Choice determined to pursue that option.

That would leave Debtor with nothing, not even vindication of his honor.

Therefore, even without Debtor's enthusiastic cooperation the Trustee has options that seem to be in the best interests of creditors, even if they are not in Debtor's financial best interests.

      b. If Debtor's Allegations Are Valid and If the First Choice Counterclaims Are Not Valid, Then Debtor Has Great Financial Incentive to Cooperate, Even Without the 15% Interest in the Lawsuit

If the Court approves the contingency fee arrangement, the Trustee is entitled to 55% to 60% of the proceeds of the litigation after payment of the expenses of the litigation. From his recovery, the Trustee would then pay the administrative claims and the unsecured claims filed in the estate.

If the Trustee prevails, presumably First Choice's counterclaim will be denied, and therefore its claim in this bankruptcy case would be disallowed. That leaves about $26,000 of claims. The Trustee's compensation and that of his counsel would be deducted, but the rest goes to Debtor.

If the Trustee's recovery is huge, Debtor's recovery is huge. That would seem to be enough financial incentive.

   5. Public Policy

The Bankruptcy Code gives Debtors who are in good faith the opportunity for a financial fresh start. Part of the *quid pro quo* for the bankruptcy discharge is Debtor's cooperation with

the Trustee to maximize recovery for creditors. Financial incentives for Debtor cooperation may or may not be unprecedented. This Court, however, would require proof of extraordinary justification before beginning to travel down that slippery slope. It is simply not good policy to let a Debtor demand any *quid pro quo*, in addition to a discharge and an opportunity for a fresh start, every time that the Trustee needs Debtor's reasonable cooperation.

The Court appreciates the Trustee's willingness to pursue this difficult claim, with limited prospects for recovery, for the benefit of creditors. The Court simply thinks that the Trustee has alternative ways to pursue this Lawsuit that do not include establishment of expectation that debtors must be financially compensated to fulfill their statutory duties.

## CONCLUSION

For reasons set forth above, the motion to transfer to Debtor 15% of any recovery in the lawsuit was denied by separate written order.

SIGNED 10/07/2010.

*Wesley W. Steen*
Wesley W. Steen
United States Bankruptcy Judge